## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **THE ARK GROUP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No.** |
| | ) |
| **VASQUEZ HEALTHCARE, LLC,** | ) |
| | ) |
| **Defendant.** | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |

## VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DAMAGES

Plaintiff The Ark Group ("Ark" or "Plaintiff") hereby files this Verified Complaint for Emergency Injunctive Relief and Damages, respectfully showing the Court as follows:

## NATURE OF ACTION

Ark brings this action to prevent Defendant Vasquez Healthcare, LLC ("Vasquez") from its improper misappropriation of Ark's confidential business information, intellectual property, and trade secrets in direct violation of Vasquez's contractual and legal obligations owed to Ark, and to seek redress for such violations. Ark additionally brings this action to prevent Vasquez from unilaterally,

and without contractual or legal basis, removing or interrupting Ark's ability to access and provide its clients and their members with access to Ark's services.

As set forth below, Ark is a national insurance brokerage firm and third-party planning administrator based in Omaha, Nebraska. Ark hired Vasquez to provide a base software platform, and work with Ark to build out Vasquez's original base platform to provide the specific services needed for Ark and Ark's client-organizations, as well as their members. In connection with this project, which is governed by a binding contract (the "Services Agreement"), Ark provided Vasquez with highly sensitive and proprietary information concerning Ark's internal operations, Ark's vendors, Ark's clients and their members.

In recent months, Vasquez has gone rogue and is now exploiting Ark's proprietary information (and that of Ark's clients and vendors) as Vasquez's own. Vasquez has also improperly positioned itself as a quasi-competitor by attempting to make direct arrangements with Ark's clients and vendors, using Ark's confidential and proprietary information, product and services, thus causing substantial marketplace confusion and damage to Ark's good will.  Even worse, Vasquez has threatened to shut down Ark's proprietary software platform (the "Modified Platform"), which would immediately halt service and Ark's critical access to

2

thousands of customers, members and vendors, and cause Ark untold and irreparable harm.

Ark seeks appropriate redress by this action, including immediate injunctive relief to prevent Vasquez from: (a) shutting off Ark, its customer-organizations and their members, and Ark's vendors access to the Modified Platform; (b) continuing to misappropriate and use Ark's Confidential Information, Client Work Product, and Intellectual Property (as those terms are defined by the Services Agreement); (c) continuing to prevent Ark from accessing its own confidential and proprietary data and information stored in the Modified Platform; (d)  continuing to allow a former Ark customer to access the Modified Platform and use Ark's confidential and proprietary information for unauthorized purposes; and (e) otherwise further breaching the Services Agreement and violating its legal obligations to Ark.

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Ark is a corporation organized and existing under the law of the State of Nebraska.

2.    Defendant Vasquez HealthCare, LLC ("Vasquez" or "Defendant") is a limited liability company organized and existing under the laws of the State of Georgia that can be served with process by serving its Registered Agent, Sandip

Mohapatra, at 11285 Elkins Road, Suite D4, Roswell, Georgia, 30076-5835. Upon information and belief, Mr. Mohapatra is the LLC's sole member.

3.     This Court has jurisdiction over the subject matter of this action because it is a dispute between citizens of different states and the amount in controversy exceeds $75,000 insofar as Ark's prayer for injunctive relief is concerned.   In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Ark asserts a federal cause of action herein.

4.     Venue is proper in this Court (a) because most of the operative facts relating to this dispute have occurred in this district; (b) because it involves a contract to be performed in this district; and (c) pursuant to a forum selection clause included in the contract at issue in this dispute, as set forth in further detail below.

## BACKGROUND FACTS

### A. The Services Agreement between Ark and Vasquez

5.     Ark is a national insurance third party administrator ("TPA") based in Omaha, Nebraska.

6.     Ark provides insurance and non-insurance TPA services to over 256 client-organizations and, within those organizations, to over 28,000 members.

7.     Ark provides a span of TPA services, working to support its client-organizations via brokerage services, licensing, and contracting, through

commission administration. Ark also provides billing, remittance, and reconciliation TPA services for its client-organizations.

8.     Importantly, Ark also provides fulfillment for its client-organizations and to over 28,000 individuals, which includes creating and providing member portals for individuals to access insurance and non-insurance resources.  Ark also provides programs to support members' understanding of the benefits and services provided by the client-organizations.

9.     Ark has created a unique and proprietary product to provide its client-organizations.

10.    Ark has relationships and agreements with a conglomerate of vendors to create the book of services for its client-organizations and their 28,000+ members.

11.    As a result of Ark's relationship with these conglomerates of vendors and its unique internal structure, Ark can negotiate pricing structures and member services that others in the TPA industry cannot. For example, Ark's relationship with certain telecare providers has allowed it to provide virtual primary care to its client-organizations (and their employee-members) at prices well-below market. By way of another example, Ark's relationship with certain laboratory services providers allows Ark to provide its members with dedicated lab programs that provide lab services at fixed amounts.

12.    The vendors providing the services under Ark's program have direct contractual relationships with Ark, not the client-organizations or their members.

13.    Vasquez is a technology company in the healthcare space that provides a basic software platform to administer certain services.

14.    On or about April 3, 2023, Ark and Vasquez entered into the Services Agreement attached hereto as **Exhibit A** (the "Services Agreement").

15.    Under the Services Agreement, Vasquez was hired to build a custom software platform for Ark that would become the data processing engine for Ark's business consisting of primarily storing and processing a large volume of sensitive data for Ark's clients and their participating members.

16.    Specifically, the aim was to provide "provide Client [Ark] the ability to manage their employees, marketers, referrals, groups, members, payments/billing, incentives, vendor payables, products/pricing, list invoices, media files, outgoing emails, text messages, online enrollment, customer service, and support other-operational and administration processes." See the Services Agreement, at Exhibit A thereto.

17.    Vasquez's original software platform (the "Original Platform") could not perform the services required by Ark under the Services Agreement. The Original Platform was in essence a repository to deposit data.

24849676.7

18.     Vasquez and Ark discussed the fact that substantial enhancement, improvements, and modifications would need to be made to the Original Platform to meet Ark's specific needs.

19.     Ark worked with Vasquez to make various enhancements, improvements, and other modifications (the "Ark Modifications") to Vasquez's existing software platform so that Vasquez could provide the services called for under the Services Agreement.

20.     Ark provided Vasquez with multiple Ark employees who provided daily support in the development of the Ark Modifications from approximately February 2022 through April 1, 2025.

21.     While Vasquez's team provided the back coding support on the software program, Ark provided the detailed information to design, support and create the Ark Modifications.

22.     Ark worked with Vasquez daily on the Ark Modifications, including guiding Vasqeuz on the modifications to make, providing Vasquez with feedback from vendors and client-organizations, and running simulations to test the Ark Modifications. Among other things, Ark provided unique logic operational process flows, plan design triggers, and proprietary member experiences.

24849676.7

23.     Ark built out the Original Platform to perform functions supporting the TPA services Ark provides to its client-organizations including without limitation commission administration, billing, remittance, reconciliation, and its fulfillment services. Essentially, every aspect of the Original Platform was modified through specific work product and information provided by Ark to meet Ark's unique needs.

24.     Vasquez's original software platform plus the Ark Modifications shall be referred to herein as the "Modified Platform."

25.      Ark also loaded its confidential and proprietary client-organizations and their members' data into the Modified Platform so that Ark, with assistance from Vasquez, could process the data to fulfill Ark's business needs.

26.     Ark also loaded its confidential and proprietary vendor data, including contractual arrangements, signed contracts and agreements with its client-organizations, pricing structures, and negotiated services, into the Modified Platform so that Ark, with assistance from Vasquez, could access the information and process the data necessary to fulfill Ark's business needs.

27.     All of the data maintained in the Modified Platform constitutes Ark's "Confidential Information" as defined under Section 3 of the Services Agreement.

28.     All of the client and member data, vendor data, Confidential Information, and the Ark Modifications constitute Ark's "Client Work Product" as defined in Section 4.2(a) of the Services Agreement.

29.     The Modified Platform also constitutes Ark's Client Work Product as defined in Section 4.2(a) of the Services Agreement.

30.     The Modified Platform also constitutes Ark's Intellectual Property Rights as defined in Section 4.2(a) of the Services Agreement.

31.     Ark retains sole and exclusive ownership of its Client Work Product and Intellectual Property Rights pursuant to Section 4.2(a) of the Services Agreement.

32.     The Services Agreement has a three (3) year term, which expires April 23, 2026.  See the Services Agreement, at Section 11.1.

33.     Under the Services Agreement, either party can terminate in the event of a material breach of the other party, but only upon thirty (30) business days written notice and a failure to cure by the breaching party.  See the Services Agreement, at Section 11.2.

B. **Vasquez Breaches the Agreement, Exploits Ark's Confidential Information, and Threatens Future Irreparable Harm.**

34.    In February 2025, Ark hosted Vasquez's Founder and Chief Executive Officer (CEO), Mr. Mohapatra, as well as one of Ark's then-client-organizations, Health Compass, Inc. ("Health Compass"), for a collaborative meeting.

35.    Ark had been providing Ark's services to Health Compass under a Non-Disclosure Agreement ("NDA"), attached hereto as **Exhibit B**.

36.    The goal of this meeting was to work as a group to discuss technology developments in the healthcare space at Ark's direction.

37.    Ark wanted to ensure it was hearing from Health Compass directly on any issues Health Compass had, and Ark felt having Mr. Mohapatra there would be productive – he could hear directly from Ark's client on how the Modified Platform was working and improvements that could be made.  Both Health Compass and Mr. Mohapatra on behalf of Vasquez owed Ark a contractual obligation to preserve Ark's confidential and proprietary information.

38.    Health Compass had approximately 3,000 members who used Ark's services. Health Compass essentially distributed Ark's services to its (Health Compass's) members.

39.    Soon after the February 2025 meeting, Health Compass began secretly reaching out to Ark's vendors in an effort to cut out Ark's role in providing the services.

40.    The vendors informed Ark of Health Compass's behavior and communicated to Health Compass that they were under contract with Ark and would not work directly with Health Compass.   A true and correct copy of one such example is attached hereto as **Exhibit C**.

41.    Health Compass had access to its particular Ark-provided platform and the members' information that had been provided by Health Compass.

42.    Health Compass does not have the ability to build out the Ark product or services, and it has no capability in the Modified Platform outside of viewing and accessing information that Health Compass directly provided to Ark.

43.    Health Compass does not have access to Ark's vendor agreements nor Ark's pricing structures with the vendors.

44.    Upon information and belief, Mr. Mohapatra, however, agreed to work with Health Compass.

45.    Mr. Mohapatra does have access to Ark's pricing structures, client-organizations list, and other Ark Confidential Information, through the management of the Modified Platform. Vasquez's and Mr. Mohapatra's access to Ark's

Confidential Information is provided strictly for purposes of the services Vasquez was required to perform for Ark pursuant to Section 3(a) of the Agreement and for no other purpose.

46.    Effective January 1, 2025, Health Compass stopped paying Ark for Ark's TPA services provided to Health Compass and its members.

47.    On or about March 31, 2025, as a result of Health Compass's refusal to pay Ark for its services, Ark terminated Health Compass's access to its systems.

48.    Upon information and belief, during that time, Vasquez began providing services to Health Compass including access to the Modified Platform and Ark's confidential and proprietary information maintained in that platform and collecting payment for those services.

49.    After Ark turned off Ark's services for Health Compass for non-payment for TPA services, Vasquez improperly turned Health Compass' access to Ark's services back on.

50.    Vasquez has no relationship with Ark's vendors and no ability to provide Health Compass with Ark's TPA services. Vasquez is strictly prohibited from using Ark's Confidential Information outside the parameters of the Service Agreement and without Ark's express consent.  Yet, Vasquez did so to Ark's detriment.

51.     Ark's vendors have expressed confusion as to whether Health Compass members should be provided the services covered by their contracts with Ark.

52.     Ark's vendors would be within their contractual rights to bill Ark for services provided to Health Compass members and, upon information and belief, intend to do so.

53.     Vasquez, after improperly turning back on Health Compass's access to Ark's services, also emailed Ark, Ark's vendors, and Health Compass's members, announcing that a new third party administrator would be performing healthcare benefit services soon. A true and correct copy of this correspondence is attached hereto as **Exhibit D**.

54.     Upon information and belief, Vasquez has been paid by Health Compass approximately $100,000.00 per month to perform services provided by Ark and using the Modified Platform.

55.     Upon information and belief, Vasquez is using Ark's Client Work Product and/or Intellectual Property Rights to provide services to Health Compass.

56.     In addition to improperly exploiting Ark's Confidential Information, Client Work Product, and/or Intellectual Property Rights, Vasquez is threatening to cause irreparable harm by disrupting service to Ark's other client-organizations and their 28,000 members.

57.     Specifically, on April 24, 2025, Vasquez sent Ark an email (along with an invoice dated April 23, 2025) suggesting that Vasquez had elected to unilaterally terminate the Services Agreement without cause.  A true and correct copy of this correspondence is attached hereto as **Exhibit E**.

58.     Pursuant to the April 24, 2025 correspondence, Vasquez reported that differences in charges for the services provided by Vasquez and irregular timing of payments, etc. resulted in Vasquez unilaterally deciding to terminate the Agreement. Vasquez attached an invoice dated April 23, 2025 and reported that Ark had until May 31, 2025 to migrate its data from the Modified Platform.

59.     There is no lawful basis for this threat. As set forth above, Section 11.2 of the Services Agreement states that it may be terminated early only if there has been notice of a material breach and the breaching party has been given thirty (30) business days to cure. See the Services Agreement, at Section 11.2.

60.     There has been no material breach here by Ark.

61.     Ark has not been given thirty (30) business days' notice to cure any alleged breach.

62.     At no time prior to April 23, 2025, did Vasquez express to Ark the belief that Ark was in material breach of the Services Agreement.  Although Vasquez mentioned irregular invoice rates and irregular payments were the basis for its

14

decision to terminate the Agreement, Exhibit A to the Agreement only required Ark to pay a monthly minimum fee of $500. There is no evidence that Ark ever failed to pay the minimum monthly fee called for in the Agreement.

63.     At no time prior to April 23, 2025, did Vasquez express to Ark the belief that Ark was delinquent in any of its payment obligations under the Services Agreement.

64.     The invoice Vasquez sent to Ark on April 24, 2025, was the first invoice Ark was sent during the first two years the parties were operating under the Services Agreement.

65.     Since the execution of the Services Agreement, Ark has sent Vasquez numerous payments in excess of the minimum monthly amount called for by the Services Agreement, which Ark calculated based on the services performed by Vasquez to customize the base product to fit Ark's needs.

66.     Vasquez accepted such payments, and never communicated such payments were of an incorrect amount or at an incorrect time.

67.     Upon information and belief, the April 23, 2025, invoice from Vasquez includes excessive and improper charges – including charges for Vasquez's improper processing of data for Health Compass.

68.    As outlined above, Vasquez previously called, and is currently calling, Ark's vendors who provide services for Arks' client-organizations (including Health Compass) to (a) spread misinformation about Ark, and (b) attempt to contract directly with the vendors and cut out Ark from providing the services.

69.    On April 28, 2025, Ark, via counsel, sent a letter to Vasquez to address the concerns detailed above. In particular, Ark demanded that Vasquez: (a) cease and desist from utilizing Ark's Confidential Information; and (b) confirm that it will not unilaterally (and improperly) disable Ark's access to the Modified Platform.  A true and correct copy of this correspondence is attached hereto as **Exhibit F**.

70.    To date, Vasquez has failed to provide reasonable assurances in response to Ark's requests.

71.    Moreover, although all of the confidential and proprietary information stored and managed in the Modified Platform belongs to Ark, Vasquez has refused to allow Ark access to some of that information, including without limitation accessing signed agreements with its client-organizations.  Vasquez is breaching its obligations under the Agreement by failing to give Ark full access to its data and confidential information as required under the Agreement.

72.    As Vasquez acknowledges in the Services Agreement, if Ark's use of the Modified Platform is suspended, such a suspension would be detrimental to Ark,

Ark's client-organizations and their 28,000+ members, and Ark's relationships with its vendors. *See* the Services Agreement, at Section 1.8.

## Count I: Breach of Contract; Breach of Duty of Good Faith and Fair Dealing

73.     Ark incorporates by reference the allegations of Paragraphs 1–72 of the Complaint as if fully restated herein.

74.     At all relevant times, including as of the date of this filing, Vasquez was bound by the terms of the Services Agreement.

75.     The Services Agreement is a valid and enforceable contract between Ark and Vasquez.

76.     Vasquez owes Ark a duty of good faith and fair dealing as it relates to the Services Agreement.

77.     As outlined above, the Services Agreement prohibits the misappropriation and unauthorized use or disclosure of Ark's Confidential Information, Client Work Product, and Intellectual Property Rights.

78.     The Services Agreement also requires notice of a material breach, with a 30-business day right to cure, before termination of the Services Agreement.

79.     Ark owns the confidential and proprietary information stored in the Modified Database and used in the provision of the TPA services Ark provides to its client-organizations and their members.  Vasquez is obligated to provide Ark full

access to all data and information related to Ark, its client-organizations and their members, vendors, and all other data and information managed and used in the Modified Platform for Ark.

80.    Vasquez materially breached the Services Agreement by, among other things, improperly exploiting, using, and disclosing Ark's Confidential Information, Client Work Product, and Intellectual Property Rights (and that of Ark's client-organizations and vendors).

81.    Vasquez materially breached the Services Agreement by, among other things, overcharging Ark for Vasquez's services.

82.    Vasquez materially breached the Services Agreement by failing to allow Ark full access to all information managed and stored in the Modified Platform including without limitation access to signed contracts with client-organizations.

83.    Vasquez materially breached the Services Agreement by, among other things, improperly threatening to terminate the Services Agreement without a lawful basis for doing so.

84.    Vasquez breached the Services Agreement by, among other things, accessing and using Ark's confidential and proprietary information for the benefit of Health Compass from and after the date Health Compass was terminated by Ark,

and by utilizing Ark's vendor base along with Ark's confidential and proprietary information in collusion with Health Compass to compete directly with Ark.

85.    Vasquez breached the duty of good faith and fair dealing by failing to abide by the terms of the Service Agreement.

86.    Vasquez has failed to cure these defaults despite being given adequate opportunity to do so.

87.    As a direct and proximate result of Vasquez's breaches, Ark has suffered damages and continues to suffer irreparable harm in the form of the loss of the benefits of its bargains, loss of the exclusive use of its Confidential Information, Client Work Product, and Intellectual Property Rights, loss of its competitive advantages in the marketplace, damage to customer relationships, loss of business opportunities, reputational harm, loss of relationships with its vendors and/or client-organizations, loss of goodwill, and monetary damages in an amount to be determined.

88.    Absent an injunction to prevent Vasquez from continuing to use, disseminate, reveal and/or divulge Ark's Confidential Information, Client Work Product, and Intellectual Property Rights, for itself and on behalf of Health Compass or others, Ark will continue to be irreparably injured. Ark has no meaningful remedy at law for these irreparable injuries.

24849676.7

89.     Ark is entitled to injunctive relief to prevent irreparable harm, as well as damages, in an amount to be proven at trial, but in no event less than X, attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

90.     Ark is also entitled to attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

## Count II:  Trade Secret Misappropriation/Conspiracy to Misappropriate Trade Secrets (DTSA)

91.     Ark incorporates by reference the allegations of Paragraphs 1–90 of the Complaint as if fully restated herein.

92.     As more fully described above, Ark develops and owns Confidential Information including, but not limited to, vendor and customer-organizations information (including contact information, pricing, contract terms, renewal periods, volume of business, needs, and preferences), pricing structures, methods of doing business, negotiation strategies, and the Modified Platform. This information is protectable under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., as trade secrets.

93.     These trade secrets relate to products and services used in, and intended for use in, interstate commerce.

94.     Ark developed this trade secret information through extensive time, labor, skill, and money.

95.     Ark takes reasonable steps to protect such trade secrets using physical, personnel, and electronic security protections, including password protections, automatic log-outs, and other restrictions. Among other things, Ark requires contractors such as Vasquez to execute confidentiality agreements restricting access and use to Ark's confidential and proprietary data and information.

96.     Ark's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

97.     Ark's trade secrets have enabled it to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets.

98.     Vasquez, individually and/or acting in concert, misappropriated and conspired to misappropriate, without Ark's authorization, Ark's trade secrets and plan to use such trade secrets in connection with the operation of Vasquez and/or other co-conspirators.

99.     Upon information and belief, Vasquez procured Ark's trade secrets using improper means and is in a position to use Ark's trade secrets in its relationship

with Health Compass and/or others and/or disclose such trade secrets to Health Compass and/or others.

100.   Vasquez's misappropriation of Ark's trade secrets has caused actual injury to Ark by, among other things, destroying Ark's exclusive ownership and use of the trade secret information, limiting and threatening to destroy Ark's access to its trade secret information, devaluing the trade secret, and causing a loss of competitive advantage in the marketplace, loss of business, confusion of customers, and loss of goodwill. Ark is entitled to damages compensating Ark for actual damages caused by Vasquez's misappropriation as well as unjust enrichment damages. 18 U.S.C. § 1836(b)(3).

101.   Vasquez has been unjustly enriched as a result of its misappropriation, as described above, and Ark is entitled to any revenue generated from Vasquez's misappropriation of Ark's trade secrets.

102.   Vasquez's willful and malicious misappropriation of Ark's trade secrets entitles Ark to an award of exemplary damages and attorneys' fees. 18 U.S.C. § 1836(b)(3).

103.   As a result of the Vasquez's willful misappropriation of Ark's trade secrets, Ark has suffered and continues to suffer irreparable harm in the loss of the exclusive use of its trade secrets, loss of competitive advantages in the marketplace,

damage to customer relationships, loss of customers in which it invested significant time, effort and money to develop, the loss of goodwill it has built with those customers, and the loss of the opportunity to continue doing business with those customers in the future. Wherefore, Ark is entitled to injunctive relief to prevent irreparable harm. 18 U.S.C. § 1836(b)(3).

## Count III: Trade Secret Misappropriation/Conspiracy to Misappropriate Trade Secrets (Georgia Trade Secrets Act)

104.    Ark incorporates by reference the allegations of Paragraphs 1–103 of the Complaint as if fully restated herein.

105.    As more fully described above, Ark develops and owns Confidential Information including, but not limited to, vendor and customer-organizations information (including contact information, pricing, contract terms, renewal periods, volume of business, needs, and preferences), pricing structures, methods of doing business, negotiation strategies, and the Modified Platform. This information is protectable under the Georgia Trade Secrets Act, GA Code § 10-1-761, *et seq.*, as trade secrets.

106.    These trade secrets relate to products and services used in, and intended for use in, interstate commerce.

107.    Ark developed this trade secret information through extensive time, labor, skill, and money.

108.   Ark takes reasonable steps to protect such trade secrets using physical, personnel, and electronic security protections, including password protections, automatic log-outs, and other restrictions.

109.   Ark's trade secrets derive independent economic value, both actual and potential, from not being generally known to, and not readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

110.   Ark's trade secrets have enabled it to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its trade secrets.

111.   Vasqeuez, individually and/or acting in concert, misappropriated and conspired to misappropriate, without Ark's authorization, Ark's trade secrets and plan to use such trade secrets in connection with the operation of Vasquez and/or other co-conspirators.

112.   Upon information and belief, Vasquez procured Ark's trade secrets using improper means and is in a position to use Ark's trade secrets in its relationship with Health Compass and/or others and/or disclose such trade secrets to Health Compass and/or others.

113.   Vasquez's misappropriation of Ark's trade secrets has caused actual injury to Ark by, among other things, destroying Ark's exclusive ownership and use of the trade secret information, limiting and threatening to destroy Ark's access to its trade secret information, devaluing the trade secret, and causing a loss of competitive advantage in the marketplace, loss of business, confusion of customers, and loss of goodwill. Ark is entitled to damages compensating Ark for actual damages caused by Vasquez's misappropriation as well as unjust enrichment damages. O.C.G.A. § 10-1-763.

114.   Vasquez has been unjustly enriched as a result of its misappropriation, as described above, and Ark is entitled to any revenue generated from Vasquez's misappropriation of Ark's trade secrets.

115.   Vasquez's willful and malicious misappropriation of Ark's trade secrets entitles Ark to an award of exemplary damages and attorneys' fees. O.C.G.A. §§ 10-1-763, 10-1-764.

116.   As a result of the Vasquez's willful misappropriation of Ark's trade secrets, Ark has suffered and continues to suffer irreparable harm in the loss of the exclusive use of its trade secrets, loss of competitive advantages in the marketplace, damage to customer relationships, loss of customers in which it invested significant time, effort and money to develop, the loss of goodwill it has built with those

customers, and the loss of the opportunity to continue doing business with those customers in the future. Wherefore, Ark is entitled to injunctive relief to prevent irreparable harm. O.C.G.A. § 10-1-762.

### Count IV: Unlawful Interference with Contractual and Business Relations

117.    Ark incorporates by reference the allegations of Paragraphs 1-116 of the Complaint as if fully restated herein.

118.    Vasquez engaged in unfair conduct when it utilized Ark's Confidential Information, Client Work Product, and Intellectual Property Rights to compete with Ark and wrongfully interfere with the ongoing customer contractual and business relationships it worked hard to establish with its vendors and client-organizations.

119.    Because Vasquez interfered with Ark's contractual and business relationships, Tanium has suffered and continues to suffer damages.

120.    Upon information and belief, Vasquez has intentionally and maliciously interfered with the contractual and business relationships between Ark and its client-organizations and its vendors by using Ark's Confidential Information, Client Work Product, and Intellectual Property Rights to solicit Ark's client-organizations and vendors.

121.    Vasquez's conduct went and continues to go beyond generally accepted standards of morality, professionalism, and socially acceptable conduct.

122.    Vasquez is not a party to the contracts that Ark has with its vendors and/or its client-organizations and is a stranger to those agreements and the business relationships between Ark and its vendors.

123.    Absent an injunction to prevent Vasquez from continuing to tortiously interfere with Ark's contractual and business relationships with its vendors and client-organizations, Ark will be irreparably injured. Ark has no meaningful remedy at law for these irreparable injuries.

124.    Wherefore, Ark is entitled to injunctive relief to prevent irreparable harm, as well as compensatory and punitive damages, attorneys' fees, costs of suit, and such other relief that the Court may deem just and proper.

## Count V: Unfair and Deceptive Trade Practices

125.    Ark incorporates by reference the allegations of Paragraphs 1-124 of the Complaint as if fully restated herein.

126.    As described above, Vasquez has engaged in unfair and deceptive conduct in violation of O.C.G.A. § 10-1-370, et seq., including, among other things, engaging in false and misleading statements regarding Ark and Ark's services to vendors and/or client-organizations.

127.    Vasquez's false and misleading statements have tarnished Ark's goodwill and will continue to harm Ark if not enjoyed.

24849676.7

128.  By engaging in the conduct described above, Vasquez has (a) disparaged the goods, services, or businesses of Ark by false or misleading representative of fact; (b) passing off services of Ark's as if such services are Vasquez's; and (c) otherwise engaged in conduct which creates a likelihood of confusion or misunderstanding in the marketplace as to such services.

129.  Accordingly, Ark is entitled to injunctive relief prohibiting Vasquez from engaging such conduct and entitled to recover its costs and reasonable attorney's fees pursuant to O.C.G.A. § 10-1-373.

## Count VI:  Injunctive Relief

130.  Ark incorporates by reference the allegations of Paragraphs 1-129 of the Complaint as if fully restated herein.

131.  Vasquez's violations and breaches of the Service Agreement are harming, and will continue to harm, Ark.

132.  Vasquez's misappropriation of Ark's Confidential Information, Client Work Product, and Intellectual Property are harming, and will continue to harm, Ark.

133.  Vasquez is willingly engaging in wrongful and malicious conduct designed to harm Ark and devalue Ark's Confidential Information, Client Work Product, and Intellectual Property.

28

134.   Vasquez threats to terminate the Services Agreement and deny Ark, Ark's vendors, Ark's client-organizations and thousands of members access to the Modified Platform are in violation of the Services Agreement and the law.

135.   Vasquez must be held to its obligation to work with Ark to maintain the status quo and perform Vasquez's obligations under the Service Agreement.

136.   As Vasquez acknowledges, a suspension or discontinuation of service to Ark, its vendors, and its customer-organizations and their members would be devastating to Ark's business, its reputation, and its viability as a third-party administrator.

137.   Vasquez must maintain the status quo and permit Ark and its vendors and customer-organizations and their members access to the Modified Platform until such time that the parties can coordinate a transition plan to a new software provider. Until this transition has occurred, Ark's client-organizations and their members well-being and safety demands that Vasquez continuing to maintain the existing Modified Platform.

138.   As Vasquez acknowledged and agreed in the Services Agreement, breaches of the Service Agreement's confidentiality provision, Section 3 thereto, would cause irreparable damage to the other for which a remedy at law is not

adequate, and that in such event, Ark would be entitled to appropriate injunctive relief.

139.    Vasquez's misappropriation of Ark's Confidential Information, Client Work Product, and Intellectual Property are harming, and will continue to harm, Ark and is in violation of multiple provisions of the Services Agreement and law.

140.    Vasquez's refusal to give Ark full and complete access to all confidential and proprietary information as well as all data related to Vasquez's client-organizations, members and vendors, including access to signed agreements stored in the platform, has harmed, and will continue to harm, Ark and Vasquez is in violation of multiple provisions of the Services Agreement.

141.    Unless Vasquez is temporarily, preliminarily, and permanently enjoined and restrained, there is a substantial threat that Vasquez will continue to violate the Services Agreement and law through misappropriation and use of Ark's Confidential Information, Client Work Product, and Intellectual Property.

142.    The threatened harm to Ark without an injunction prohibiting Vasquez from (a) shutting off Ark, its customer-organizations and their members, and Ark's vendors to the Modified Platform; and (b) continuing to misappropriate and use Ark's Confidential Information, Client Work Product, and Intellectual Property far outweighs any potential harm to Vasquez if it is enjoined.

143.    Enjoining Vasquez from further breaching the Services Agreement and violating its legal obligations will not disserve the public interest.

144.    For these reasons, which will be more fully explained in an *Emergency Motion for Temporary Restraining Order and Preliminary Injunction* to be filed by Ark shortly after the filing of this Verified Complaint, this Court should enter a Temporary Restraining Order and/or Preliminary Injunction prohibiting Vasquez from: (a) shutting off Ark, its customer-organizations and their members, and Ark's vendors to the Modified Platform; (b) continuing to misappropriate and use Ark's Confidential Information, Client Work Product, and Intellectual Property; (c) continuing to deny Ark full and complete access to all information and data related in any manner to Ark's client-organizations, their members, and vendors; and (d) otherwise further breaching the Services Agreement and violating its legal obligations to Ark.

### Count VII: Attorney's Fees

145.    Ark incorporates by reference the allegations of Paragraphs 1-144 of the Complaint as if fully restated herein.

146.    Vasquez has acted in bad faith and has been stubbornly litigious.

147.    Vasquez has caused Ark unnecessary trouble and expense.

24849676.7

148.    Accordingly, pursuant to O.C.G.A. § 13-6-11, Ark is entitled to recover its expenses of litigation, including its reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ark respectfully prays that this Court issue the following relief:

A. For a trial by a twelve-person jury;

B. That judgment be entered in its favor on Counts I-VII;

C. That Ark be awarded damages against Vasquez in an amount to be determined at a later date;

D. That the Court order Vasquez to pay to Ark both the costs of this action and the reasonable attorney's fees Ark incurred in prosecuting this action under O.C.G.A. § 13-6-11;

E. That the Court enter a Temporary Restraining Order and/or Preliminary Injunction prohibiting Vasquez from:

    a. shutting off Ark, its customer-organizations and their members, and Ark's vendors to the Modified Platform;

    b. continuing to misappropriate and use Ark's Confidential Information, Client Work Product, and Intellectual Property;

24849676.7

    c.  continuing to grant Health Compass access to the Modified Platform and use of Ark's confidential and proprietary data and information, including vendor data, to facilitate the services Vasquez is providing to Health Compass;

    d.  continuing to preclude Ark from accessing and downloading any and all data and information maintained in the database including without limitation all signed contracts from Ark's client-organizations; and

    e.  otherwise further breaching the Services Agreement and violating its legal obligations to Ark; and

F.  That the Court grant to Ark such other and additional relief as is just and proper.

Respectfully submitted this 9th day of May, 2025.

                                            **_/s/Brooke W. Gram_**
                                          Brooke W. Gram
                                          bgram@balch.com
                                          Georgia Bar No. 810901
                                          Matthew B. Ames
                                          mames@balch.com
                                          Georgia Bar No. 015898
                                          **BALCH & BINGHAM LLP**
                                          30 Ivan Allen Jr. Blvd. N.W., Suite 700
                                          Atlanta, GA 30308
                                          Telephone: (404) 261-6020

Facsimile: (404) 261-3656

*Attorneys Plaintiff the Ark Group*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **THE ARK GROUP,** )  | |
| )  | |
| **Plaintiff,** )  | |
| )  | |
| v. )  | **Civil Action No.** |
| )  | |
| **VASQUEZ HEALTHCARE, LLC,** )  | |
| )  | |
| **Defendant.** )  | |
| _____ )  | |

## VERIFICATION

I, Don Hansen, the CEO, of Plaintiff, The Ark Group, in the above-captioned action. I hereby verify that the claims and/or statements made of the foregoing *Verified Complaint for Emergency Injunctive Relief and Damages* are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: May ___9___, 2025

By: _____
        Don Hansen, CEO

Sworn to and subscribed before me,
This __9__ day of __May__, 2025.
_____
Notary Public My commission Expires:
4/28/26

TREASURE J. BALLARD
GENERAL NOTARIAL
**SEAL**
STATE OF NEBRASKA
Commission Expires
July 28, 2026

24865691.1